UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

LILIAN R.,                                                     Case No. 6:25-cv-00108-AR

                      Plaintiff,                              OPINION AND ORDER

        v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

                      Defendant.

_____

**ARMISTEAD, United States Magistrate Judge**

        Lilian R. challenges the Commissioner's denial of her supplemental security income

application arguing that the Administrative Law Judge erred in analyzing her subjective

symptom testimony and the medical opinion of Dr. Aroon Suansilppongse, M.D. (Pl.'s Br. at 2-

16, ECF 11.) This court "will disturb the denial of benefits only if the decision contains legal

error or is not supported by substantial evidence." *Kitchen v. Kijakazi*, 82 F.4th 732, 738 (9th Cir.

2023) (quoting *Lambert v. Saul*, 980 F.3d 1266, 1270 (9th Cir. 2020)). With that standard of

review applied, the Commissioner's decision is reversed and this case is remanded for an immediate calculation and award of benefits.

  **(1)**  ***Subjective Symptom Testimony.*** Plaintiff argues that the ALJ failed to give specific, clear and convincing reasons for discounting her subjective symptom testimony. *Smartt v. Kijakazi,* 53 F.4th 489, 497 (9th Cir. 2022) (holding that if a claimant provides objective medical evidence of an underlying impairment and there is no affirmative evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony). According to plaintiff, the ALJ's bases for discounting her testimony—the medical evidence, treatment history, past ability to work, and activities of daily living (ADL)—were unsupported or failed to account for the entire record. (Pl. Br. at 8-15; Tr. 765-67.) Plaintiff is correct.

  As for inconsistency with the medical evidence, plaintiff argues that the ALJ failed to link her testimony to particular portions of the record. (Pl.'s Br. at 12-13.) Although an ALJ may use "inconsistent objective medical evidence in the record to discount subjective symptom testimony," the ALJ "cannot effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence fully corroborating every allegation within the subjective testimony." *Smartt,* 53 F.4th at 498 (simplified); *see Coleman v. Saul,* 979 F.3d 751, 756 (9th Cir. 2020) ("An ALJ, however, may not discredit the claimant's subjective complaints solely because the objective evidence fails to fully corroborate the degree of pain alleged."). Regarding plaintiff's anxiety, the ALJ cited normal examinations to demonstrate inconsistency between the objective medical record and plaintiff's symptom testimony. (Tr. 766.) For example, the ALJ referenced that plaintiff displayed "alertness,

Page 2 – OPINION AND ORDER
*Lillian R. v. Comm'r Soc. Sec. Admin.*, 6:25-cv-00108-AR

orientation, a pleasant and cooperative demeanor, a normal, clean appearance, intact grooming and hygiene, with generally normal behavior, appropriate social interaction, and intact memory" to demonstrate that plaintiff's mental health impairments were not as limiting as she claimed. (Tr. 766.)

That rationale is unavailing because in the paragraph before, the ALJ acknowledged evidence of plaintiff's abnormal mental exams consistent with plaintiff's testimony. *Id.* Without discussing why plaintiff's testimony was inconsistent with the evidence of medical record, he reported that, consistent with her testimony, plaintiff:

> exhibited the following signs and symptoms: anhedonia, depressed mood, difficulty concentrating, memory problems, feelings of guilt or worthlessness, hopelessness, anxiety, irritability, decreased energy, fatigue, sleep disturbance, worried thoughts, anger, panic attacks, social isolation, difficulty with social interaction, unstable and intense interpersonal relationships, difficulty making friends, poor social communication, social isolation, identity disturbance, feelings of emptiness, and a history of self- harm, but no current suicidal ideation.

(Tr. 766.)

Here, the ALJ improperly cherry-picked the record by focusing on normal mental status when the record also contained abnormal mental status exams consistent with plaintiff's testimony. *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (holding that an ALJ may not "cherry-pick" evidence that disfavors disability without considering its context in record).

Regarding plaintiff's migraines, the ALJ found her testimony inconsistent with her normal MRI and past work experience. (Tr. 765.) First, it is unclear why a normal MRI from seven years before plaintiff's alleged onset date is relevant when the ALJ already found that plaintiff's migraines were a severe medically determinable impairment and found that her migraines "could reasonably be expected to cause the alleged symptoms." (Tr. 765.) Further,

Page 3 – OPINION AND ORDER
*Lillian R. v. Comm'r Soc. Sec. Admin.*, 6:25-cv-00108-AR

normal brain imaging is consistent with a primary headache disorder diagnosis. Social Security Ruling (SSR) 19-4p, *available at* 2019 WL 4169635 (Aug. 26, 2019). SSR 19-4p states that physicians may conduct imaging scans such as MRIs to "rule out other possible causes of headaches - such as a tumor." In other words, a normal MRI is entirely consistent with a migraine diagnosis. SSR 19-4p, 2019 WL 4169635; *see Cortez v. O'Malley*, No. 3:23-CV-00391-CLB, 2024 WL 982686, at *6 (D. Nev. Mar. 7, 2024) (holding that using a lack of MRI findings as objective evidence to discredit the plaintiff's symptom complaints was an error by the ALJ) (citation omitted); *see also Ha H. v. Kijakazi*, No. 20-CV-06866-KAW, 2022 WL 17968843, at *2 (N.D. Cal. Sept. 27, 2022) ("The absence of MRI is insufficient because migraines are not inconsistent with normal MRI findings. MRIs are used to rule out diseases of the brain or nerves that may cause headaches or migraines, not as evidence that the headaches are nonexistent.") (citation modified).

Next, the ALJ discounted plaintiff's testimony because she admitted that she had been able to "work with" her headaches. (Tr. 765.) The Commissioner defends that reason, arguing that the "Ninth Circuit recognizes that working despite having the same allegedly disabling conditions contradicts a claimant's allegations." (Def. Br. at 10, ECF 13 (citing *Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021)). But the Commissioner's reliance on *Ahearn* is misplaced. In that case, the Ninth Circuit noted that the claimant worked despite his impairments and that his "employment was terminated due to funding issues rather than due to poor performance." *Ahearn*, 988 F.3d at 1117. Here, plaintiff quit her last job due to her impairments after taking medical leave. (Tr. 787.) Further, she testified that her migraines caused her to miss work so much that "they threatened to fire [her]" and that she was on "[her] final warning" before going

Page 4 – OPINION AND ORDER
*Lillian R. v. Comm'r Soc. Sec. Admin.*, 6:25-cv-00108-AR

on medical leave. *Id.* The ALJ did not provide a clear and convincing reason supported by substantial evidence to show that plaintiff's testimony was inconsistent with the objective medical record.

The ALJ also discounted plaintiff's testimony because "her overall treatment has been very conservative, largely counseling as well as over the counter and prescription medication." (Tr. 767.) As documented by the ALJ, plaintiff treated her mental health impairments with therapy and psychotropic medications such as "Adderall, Trileptal, Valium, Vistaril, Wellbutrin, Seroquel, amitriptyline, lithium, Lamictal, Geodon, Celexa, Topamax, Prozac, Klonopin, Wellbutrin, Risperdal, trazodone, Abilify, Remeron, Invega, Zoloft, Lexapro, Cymbalta, Depakote, Zyprexa, Xanax, Vraylar, Paxil, and Latuda, with some improvement in her symptoms." (Tr. 766.) Contrary to the ALJ's finding, many district courts within the Ninth Circuit have held that therapy and the prescription of psychotropic medications, such as the ones taken by plaintiff listed above, are not conservative treatment. *See, e.g., Elijah L. S. v. Comm'r Soc. Sec. Admin.*, Case No. 3:20-CV-01089-AR, 2022 WL 17845933, at *3 (D. Or. Dec. 22, 2022) (holding that therapy and the prescription of psychotropic medications as mental health treatment were not conservative treatment); *Sandberg v. Comm'r Soc. Sec. Admin.*, Case No. 3:14-cv-00810-ST, 2015 WL 2449745, at *6 (D. Or. May 22, 2015) ("Prescription medicine such as Lithium is certainly not conservative in the same manner as over-the-counter pain relievers."); *Gia M. P. v. Comm'r Soc. Sec. Admin.*, Case No. 6:17-cv-01825-MA, 2018 WL 4031606, at *6 (D. Or. Aug. 23, 2018) (holding that prescription medications and therapy were not conservative treatment); *Benjamin v. Colvin*, Case No. ED CV 13-2343-E, 2014 WL 4437288, at *3 (C.D. Cal. Sept. 4, 2014) ("Courts specifically have recognized that the prescription of Lithium, Seroquel,

and Zyprexa, connotes mental health treatment which is not 'conservative,' within the meaning of social security jurisprudence." (collecting cases)).

As to ADLs, the ALJ pointed to plaintiff's testimony that "she could perform adequate self-care, prepare simple meals, care for her pets, go for walks, engage in hobbies, perform simple household chores, and go shopping" as a basis to discount her symptom testimony. (Tr. 767.) Plaintiff takes issue with that finding, arguing that the ALJ did not identify any specific activities in which she engaged that exceeded her stated limitations, or that could translate to full-time work. The court agrees.

That is because the ALJ failed to identify any activities that she performed inconsistent with her allegations. Because the ALJ did not explain "which daily activities conflicted with which part of [plaintiff's] testimony," the ALJ erred. *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (emphasis in original); *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony."). The ALJ failed to specify what testimony was not credible and link that testimony to the parts of the record and thus erred. *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2017) (citing *Burrell*, 775 F.3d at 1139).

In sum, the ALJ did not provide a clear and convincing reason supported by substantial evidence for discounting plaintiff's subjective symptom testimony. Therefore, the ALJ erred.

(2)    *Aroon Suansilppongse, M.D.* On December 10, 2018, Suansilppongse, a reviewing agency doctor at the initial level, determined that plaintiff's depressive, bipolar and related disorders, anxiety, and obsessive-compulsive disorders caused moderate limitations in her ability to maintain attention and concentration for extended periods, carry out detailed

instructions, perform at a consistent pace, interact with the public, get along with coworkers, accept instruction, and appropriately respond to criticism. (Tr. 79, 82-83.) He wrote that plaintiff had the "mental capacity for simple work-related activity (1-2 steps tasks) with infrequent interactions with coworkers and the public." (Tr. 84.) The ALJ found Suansilppongse's opinion generally persuasive, but declined to adopt his opinion that plaintiff was limited to 1-2 step tasks. That is, the ALJ found that

> while not inconsistent with the evidence of record, the language used in the prior administrative medical finding of a limitations to 1-2 step tasks provided by the State agency doctor at the initial level is not vocationally defined, and thus, does not adequately articulate the limitation for use in a residual functional capacity assessment.

(Tr. 767.) The ALJ, however, was incorrect to state that a limitation to one- to two-step tasks "is not vocationally defined" because that limitation is vocationally defined as Level One Reasoning. (Tr. 767); DOT (4th ed. 1991) App. C, § 111, 1991 WL 688702.

"The Dictionary of Occupational Titles (DOT) describes the requirements for each listed occupation, including the necessary General Educational Development ('GED') levels; that is, 'aspects of education (formal and informal) . . . required of the worker for satisfactory job performance.'" *Id.* at 846 (quoting DOT, App. C, 1991 WL 688702 (4th ed. 1991)). "The GED levels include[ ] the reasoning ability required to perform the job, ranging from Level 1 (which requires the least reasoning ability) to Level 6 (which requires the most)." *Id.* Level One reasoning involves "[a]pply[ing] commonsense understanding to carry out simple one-or two-step instructions" and Level Two reasoning involves "[a]pplying commonsense understanding to carry out detailed but uninvolved written or oral instructions." DOT (4th ed. 1991) App. C, § 111, 1991 WL 688702.

Page 7 – OPINION AND ORDER
*Lillian R. v. Comm'r Soc. Sec. Admin.*, 6:25-cv-00108-AR

Not only did the ALJ err by stating that a limitation to one- to two-step tasks was not vocationally defined, the ALJ further erred by redefining Suansilppongse's limitation to only "simple work." (Tr. 767.) That was error because a limitation to one- to two-step tasks conflicted with the demands of level two reasoning but the ALJ's limitation to "simple work" did not. *See Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1003 (9th Cir. 2015) (holding that "[t]here was an apparent conflict between . . . performing one- and two-step tasks, and the demands of Level Two reasoning."); *see also James T. v. Kijakazi*, 21-cv-556-MA (JLB), 2022 WL 2952469, at *5 (S.D. Cal. July 26, 2022) ("*Rounds* is routinely cited by Courts in this Circuit for the proposition that a limitation to one- and two-step tasks precludes an individual from performing Level 2 Jobs.") (collecting cases), *report and recommendation adopted*, 2022 WL 4280647 (S.D. Cal. Sept. 15, 2022); *Kate S. v. Comm'r of Soc. Sec.*, 3:21-CV-5838-DWC, 2022 WL 1284545, at *2 (W.D. Wash. Apr. 29, 2022) ("[J]obs that only require one to two steps, and therefore encompass level one reasoning jobs, are not equivalent to jobs that require simple, routine, or repetitive tasks.").

The ALJ erred because by redefining Suansilppongse's limitation to only "simple work," he effectively rejected Suansilppongse's medical opinion that plaintiff was limited to "simple work related activity (1-2 steps tasks)" despite finding his medical opinion "persuasive" and "not inconsistent with the evidence of record." (Tr. 767.)

The Commissioner argues that the ALJ did not err in rejecting Suansilppongse's limitation to one- and two-step tasks because "[t]he ALJ properly evaluated Dr. Suansilppongse's assessment, finding that certain parts of it were unpersuasive, while other parts were persuasive." (Def. Br. at 9-10., ECF 13.) The court is not persuaded because the ALJ found Suansilppongse's

opinion "persuasive" and did not adopt that specific limitation only because it was "not vocationally defined." (Tr. 767.) Although the Commissioner argues that Suansilppongse's opinion contained internal inconsistencies, the ALJ did not make that finding and the court may not affirm a non-disabilty determination for reasons not invoked in the ALJ decision. *See Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) ("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on grounds upon which he did not rely.") (quoting *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014)).

Accordingly, the ALJ erred because he rejected Suansilppongse's limitation of plaintiff to one- and two-step tasks without properly analyzing the supportability and consistency of Suansilppongse's medical opinion.

**(3)**     *Remedy.* The court remands this case for an immediate calculation and award of benefits because plaintiff satisfies the "three-part-credit-as-true" analysis and there is no serious doubt plaintiff is disabled. *See Garrison*, 759 F.3d at 1020**,** 1022-23 (outlining the credit as true analysis and holding that a remand for benefits is appropriate when the analysis is met and there is no doubt plaintiff is disabled.)

Plaintiff satisfies all three parts of the credit as true as true analysis. (Pl. Br. at 3-15, Pl. Reply Br. at 1-6, ECF 14.) First, as explained above, the ALJ failed to provide legally sufficient reasons to discount plaintiff's testimony and reject Suansilppongse's medical opinion. Second, the record included treatment notes spanning the relevant time period, opinions from several medical sources, and plaintiff's testimony about the severity and effects of her impairments. The Commissioner does not present any conflicting evidence or unresolved factual issues regarding the improperly discredited evidence. (See Def. Br. at 11-12.) Thus, further proceedings would

Page 9 – OPINION AND ORDER
*Lillian R. v. Comm'r Soc. Sec. Admin.*, 6:25-cv-00108-AR

serve no useful purpose. Third, if plaintiff's testimony and Suansilppongse's medical opinion are credited as true, plaintiff would be unable to work any of the occupations identified by the ALJ in the decision. (Tr. 795-96, 770.)

Plaintiff testified she experienced an average of three to four migraines a week and that those migraines caused her to miss work "[m]aybe once every week or every other week out of a workweek where I was working two or three days." (Tr. 334, 787.) At her last job, she had "difficulties with staying focused on tasks" and needed to be reminded and redirected by her client to stay on task. (Tr. 791-92.) The vocational expert testified that if plaintiff was absent more than two days per month, that alone "would not be acceptable" by employers. (Tr. 795.) The vocational expert also testified that, in the positions identified by the ALJ, the need to be redirected for up to a third of the workday would not be allowed. (Tr. 796.) Thus, if plaintiff's testimony is credited as true, the ALJ would be required to find plaintiff disabled on remand. Further, Suansilppongse limited plaintiff to "simple work related activity (1-2 steps tasks)," a limitation that, as the court explained in its initial opinion, precluded plaintiff from working jobs with Reasoning Level Two (Tr. 84, 849-50.) Accordingly, if Suansilppongse's medical opinion is credited as true, plaintiff would be unable to work the jobs identified by the ALJ because they were all Reasoning Level Two. (Tr. 770.)

At bottom, reviewing the whole record creates no doubt that plaintiff is, in fact, disabled. *Garrison*, 759 F.3d at 1022-23. The record reflects that plaintiff has disabling mental limitations due to migraines, schizoaffective disorder, bipolar disorder, major depressive disorder, generalized anxiety disorder, a panic disorder, borderline personality disorder, autism spectrum disorder, and a post-traumatic stress disorder.

**CONCLUSION**

For the above reasons, the Commissioner's final decision is REVERSED, and this case is

REMANDED for an immediate calculation and award of benefits.

ORDERED: April 16 , 2026.

_____
JEFF ARMISTEAD
United States Magistrate Judge